**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MRI SOFTWARE LLC, | Case No. 1:24-cv-00485 |
| Plaintiff and Counterclaim Defendant, | Judge J. Philip Calabrese |
| v. | Magistrate Judge James E. Grimes Jr. |
| UNIVERSITY OF MINNESOTA FOUNDATION – DINNAKEN HOUSING, LLC | |
| Defendant and Counterclaim Plaintiff. | |

## OPINION AND ORDER

Plaintiff MRI Software LLC brings claims for breach of contract and unjust enrichment for failure to pay for certain software solutions in connection with university housing. In response, Defendant University of Minnesota Foundation—Dinnaken Housing, LLC brings counterclaims for the same causes of action, alleging that it terminated the contract at issue due to various technical and other issues that breached the parties' agreement. The contract at issue bars Dinnaken Housing from bringing claims one year after a cause of action accrues, and Dinnaken Housing filed its counterclaims almost two years after MRI Software allegedly breached the agreement. Accordingly, Plaintiff moves to dismiss Defendant's counterclaims for failure to state a claim under Rule 12(b)(6). For the reasons that follow, the Court **GRANTS** Plaintiff's motion.

## FACTUAL BACKGROUND

On this motion to dismiss, the Court takes the following allegations as true and construes them in favor of Dinnaken Housing as the non-moving party.

MRI Software is a real-estate software company based in Solon, Ohio. (ECF No. 3, ¶¶ 2 & 7, PageID #53 & 54.) Dinnaken Housing is a non-profit affiliated with the University of Minnesota that provides student housing near the university's campus. (*Id.*, ¶ 6, PageID #54.) Throughout 2019 and 2020, Dinnaken Housing and MRI Software negotiated an agreement for MRI Software to provide Dinnaken Housing with property-management software. (*Id.*, ¶ 7.) During these negotiations, MRI Software represented that its software would record residential and commercial transactions, handle mass move-ins and move-outs, and migrate prior tenants to the new system. (*Id.* ¶¶ 9–11.)

### A.   Relevant Contractual Terms

Dinnaken Housing and MRI Software entered a master agreement in which MRI Software promised to provide Dinnaken Housing with software and to train Dinnaken Housing staff on its use by June 30, 2022; in exchange, Dinnaken Housing agreed to pay MRI Software for its services. (*Id.*, ¶¶ 15, 19–21, & 25, PageID #55–56.)

Paragraph 9.2 of the parties' agreement allows either to terminate when the other commits a material breach that cannot be remedied:

> Either Party may terminate the Agreement including all Schedules immediately upon written notice in the event that the other Party commits a non-remediable material breach of the Agreement, or if the other Party fails to cure any remediable material breach or provide a

> written plan of cure acceptable to the non-breaching Party within 30 days of being notified in writing of such breach, except for breach of Section 3.1 (Fees and Payment Terms) which shall have a ten (10) day cure period.

(ECF No. 12-1, ¶ 9.2, PageID #158; ECF No. 3, ¶ 29, PageID #56.) Regarding the time to bring claims, Paragraph 8.6 provides: "NO CLAIM ARISING OUT OF THE AGREEMENT, REGARDLESS OF FORM, MAY BE BROUGHT AGAINST MRI MORE THAN THE SHORTER OF ONE YEAR OR THE MINIMUM PERIOD ALLOWED BY LAW AFTER THE CAUSE OF ACTION HAS OCCURRED." (ECF No. 12-1, ¶ 8.6, PageID #158.)

### B. Termination

According to the pleadings, MRI Software failed to implement the software with full functionality and train Dinnaken Housing staff by June 30, 2022—the promised completion date. (ECF No. 3, ¶¶ 24–26, PageID #55–56.) Accordingly, on July 15, 2022, counsel for Dinnaken Housing mailed MRI Software a notice of termination "because of MRI's non-remedial [*sic*] material breaches." (*Id.*, ¶ 30, PageID #56; ECF No. 3-1, PageID #64.)

In response, on August 5, 2022, counsel for MRI Software disputed that it breached the contract but accepted Dinnaken Housing's termination "effective as of November 31, 2025, the first available termination date under the Agreement." (ECF No. 3, ¶ 33, PageID #57.) Two weeks later, on August 19, 2022, Dinnaken Housing reiterated that it considered the contract terminated, but MRI Software did not respond. (*Id.*, ¶¶ 34–35.) Instead, MRI Software continued to invoice Dinnaken Housing. (*Id.*, ¶ 35.) When MRI Software requested payment for these invoices,

3

Dinnaken Housing refused to pay. (*Id.*, ¶ 36.) Over the next three months, Dinnaken Housing sent more letters to MRI Software restating its intent to terminate the contract. (*Id.*, ¶¶ 37–38, PageID #58.)

On June 7, 2023, MRI Software provided notice to Dinnaken Housing that it was terminating their agreement because of Dinnaken Housing's failure to pay the invoices. (*Id.*, ¶ 39.) Dinnaken Housing responded two days later, repeating that it had already terminated their agreement. (*Id.*, ¶ 40.) On July 20, 2023, Dinnaken Housing received confirmation that MRI Software stopped all work on the project and that future meetings between the companies were cancelled. (*Id.*, ¶ 41.)

## STATEMENT OF THE CASE

On February 11, 2024, MRI Software filed a complaint against Dinnaken Housing for breach of contract and unjust enrichment in State court. (ECF No. 1-1, PageID #8; ECF No. 1-2, PageID #14.) Dinnaken Housing timely removed the case based on diversity jurisdiction (ECF No. 1, PageID #1 & 6), and filed its counterclaims for breach of contract and unjust enrichment on April 4, 2024 (ECF No. 3, PageID #59 & 61).

MRI Software moves to dismiss the counterclaims against it for failure to state a claim under Rule 12(b)(6). (ECF No. 7, PageID #108.) In support, MRI Software argues that Dinnaken Housing failed to bring its counterclaims within the parties' one-year contractual limitations period. (*Id.*) Dinnaken Housing contends that its counterclaims are timely. (ECF No. 14, PageID #215–16.) In the alternative,

4

Dinnaken Housing argues that equitable doctrines make its counterclaims timely. (*Id.*)

## MOTION TO DISMISS STANDARD

For this order, the Court treats the counterclaims as an original complaint. *First Brands Grp., LLC v. Neenah, Inc.*, No. 1:22-cv-02128, 2023 WL 6065109, at *4 (N.D. Ohio Sept. 18, 2023). At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it

5

must treat as true, and "naked assertions," which it need not treat as true. *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## CHOICE OF LAW

Paragraph 10.15 of the parties' agreement stipulates that "[t]he Agreement shall be governed by and construed in accordance with the laws of the State of Ohio." (ECF No. 12-1, ¶ 10.15, PageID #159.) Generally, "the law of the state chosen by the parties to a contract will govern their contractual rights and duties." *Ohayon v. Safeco Ins. Co.*, 91 Ohio St. 3d 474, 477, 2001-Ohio-100, 747 N.E.2d 206, 209 (2001). The parties' agreement contains an Ohio choice-of-law provision, and neither party disputes that Ohio law governs this case. Therefore, the Court applies Ohio law.

Ohio law provides that "contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53, 544 N.E.2d 920, 923 (Ohio 1989); *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 361 (6th Cir. 2014) (applying Ohio law). The parties' intent is "presumed to reside in the language they chose to employ in the agreement." *Anzalaco v. Graber*, 2012-Ohio-2057, 970 N.E.2d 1143, ¶ 19 (Ohio Ct. App. 2012) (citation omitted). To discern the parties' intent, courts look to the plain and ordinary meaning of the language in their agreement. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37; *Eastham*, 754 F.3d at 361.

6

## ANALYSIS

MRI Software argues that the parties' agreement limits the time to bring claims. Dinnaken Housing argues that it does not; alternatively, if it does, Dinnaken Housing argues that equitable doctrines save its claims.

### I. Contractual Limitations Period

Dinnaken Housing argues that neither party's claims against the other *accrued* until termination of their agreement "because they were contractually obligated to work together to remediate non-material breaches until termination." (ECF No. 14, PageID #223.) MRI Software responds that, under the terms of the parties' agreement, the period to bring claims began on the date the cause of action *occurred* (not accrued), meaning the date of the alleged breach. (ECF No. 15, PageID #234.)

Regarding the time to bring claims, Ohio law requires that a party bringing a breach of contract action do so "within six years after the cause of action accrued." Ohio Rev. Code § 2305.06. However, the parties may establish an alternative limitations period so long as the shorter period is reasonable. *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St. 3d 619, 624, 1994-Ohio-160, 635 N.E.2d 317, 321. Here, the parties' agreement limits Dinnaken Housing's time to bring claims against MRI Software to "THE SHORTER OF ONE YEAR OR THE MINIMUM PERIOD ALLOWED BY LAW AFTER THE CAUSE OF ACTION HAS OCCURRED." (ECF No. 12-1, ¶ 8.6, PageID #158.) Note that the parties' agreement runs the limitations period for claims against MRI Software (but not Dinnaken Housing) from the date

7

the cause of action *occurred*—not accrued, though Ohio law generally runs the period from the date of accrual.

Assuming for the purposes of this analysis that the parties' one year limitation is reasonable, based on the plain terms of the contract, the Court must determine when the cause of action *occurred*.

### I.A. Breach of Contract

Under Ohio law, a breach of contract occurs where a party fails, "without legal excuse, to perform any promise which forms the whole or part of a contract and may be inferred from the 'refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence.'" *National City Bank v. Erskine & Sons, Inc.*, 158 Ohio St. 450, 461, 110 N.E.2d 598, 603 (1953) (quoting *Friedman v. Katzner*, 139 Md. 195, 114 A. 884, 886–87 (1921)). In other words, "a breach of contract action accrues when the breach occurs or when the complaining party suffers actual damages as a result of the breach." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (applying Ohio law) (citing *Flagstar Bank, F.S.B. v. Airline Union's Mortg. Co.*, 128 Ohio St. 3d 529, 2011-Ohio-1961, 947 N.E.2d 672, 675, ¶ 7; *Harris v. Liston*, 86 Ohio St. 3d 203, 1999-Ohio-159, 714 N.E.2d 377, 379; and *O'Stricker v. Jim Walter Corp.*, 4 Ohio St. 3d 84, 87, 447 N.E.2d 727, 730 (1983)). Therefore, "the general rule in Ohio is that a cause of action accrues, and a statute of limitations begins to run, when the wrongful act is committed." *Id.* (citing *Columbus Green Bldg. Forum v. State*, 2012-Ohio-4244, 980 N.E.2d 1, 10 (Ohio Ct. App. 2012)

8

(citing *Kincaid v. Erie Ins. Co.*, 128 Ohio St. 3d 322, 2010-Ohio-6036, 944 N.E.2d 207, 210, ¶ 13 (Ohio 2010))).

Contract termination presents a distinct legal concept from breach of contract. A party may terminate a contract without breaching it. Likewise, the parties' agreement distinguishes between "termination" and "breach" by setting a party's right to terminate *after* the date of material breach. Paragraph 9.2 of the parties' agreement allows either party to terminate when "the other Party commits a non-remediable material breach of the Agreement, or if the other Party fails to cure any remediable material breach or provide a written plan of cure acceptable to the non-breaching Party within 30 days of being notified in writing of such breach." (ECF No. 12-1, ¶ 9.2, PageID #158.) Therefore, the deadline for bringing a claim against MRI Software begins to run when the breach occurred—not on termination. In this respect, the one-year contractual limitations period runs from the date of the breach, even though the contract obligates the parties to work to cure or otherwise resolve the breach short of termination. Accordingly, the Court disagrees with Dinnaken Housing's argument that "neither party's claims against the other accrued until the Agreement was terminated." (ECF No. 14, PageID #223.)

Dinnaken Housing argues that MRI Software breached the contract on June 30, 2022, by failing "to deliver and implement the Software, with full functionality" and by "fail[ing] to adequately train Dinnaken's staff." (ECF No. 3, ¶¶ 25–26, PageID #56.) On July 15, 2022, Dinnaken Housing notified MRI of the alleged breach. (ECF 3-1, PageID #64.) Neither party contends that MRI Software provided a written plan

9

of cure within 30 days of Dinnaken Housing's July 15, 2022 letter notifying MRI Software of the breach. Taking Dinnaken Housing's version of the facts as true, the "cause of action occurred" either on June 30, 2022, the date of the breach, or at the latest on August 14, 2022, the date by which MRI Software failed to provide a written plan of cure. Both dates foreclose Dinnaken Housing's claim for breach of contract as untimely as a matter of law.

Alternatively, "when the 'terms of a contract are clearly repudiated by a party,' 'a cause of action for breach of contract accrues only once—at the time of repudiation.'" *G.G. Marck & Assocs. v. Peng*, 762 F. App'x. 303, 308 (6th Cir. 2019) (citing *Lutz,* 717 F.3d at 468) (applying Ohio law). Repudiation occurs where there is: "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach," or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *White Hat Mgmt., LLC v. Ohio Farmers Ins. Co.*, 167 Ohio App. 3d 663, 2006-Ohio-3280, 856 N.E.2d 991, ¶ 22 (Ohio Ct. App.) (citing *Burk v. Athens*, 123 Ohio App. 3d 98, 103, 73 N.E.2d 804, 807 (Ohio Ct. App. 1997)).

Even construing Dinnaken Housing's repudiation of the contract as the date on which the "cause of action occurred," its counterclaims still come too late. In its first letter to MRI Software on July 15, 2022, Dinnaken Housing advised that it "will not pay any remaining amounts due." (ECF No. 3-1, PageID #65.) This message constitutes "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total

10

breach." *White Hat,* 2006-Ohio-3280, at ¶ 22. From this date of repudiation, the contractual limitations period expired on or about July 15, 2023. MRI Software offers August 19, 2022 as the latest date for Dinnaken Housing's repudiation of the contract. (ECF No. 15, PageID #234.) Dinnaken Housing did not assert its counterclaims until on April 4, 2024. Either way, the parties' contract bars Dinnaken Housing's claim for breach of contract against MRI Software.

### I.B. Unjust Enrichment

In Ohio, unjust enrichment occurs when a party shows: "(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, LLC*, 171 Ohio St. 3d 464, 2022-Ohio-4363, 218 N.E.3d 838, ¶ 36. Further, a plaintiff may not recover for unjust enrichment where an express contract governs the subject matter of the litigation. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (applying Ohio law); *HAD Enters. v. Galloway*, 2011-Ohio-57, 948 N.E.2d 473, ¶¶ 9–10 (Ohio Ct. App.). Three exceptions to this rule involve "bad faith, fraud, or some other illegality." *MRI Software, LLC v. West Oaks Mall FL, LLC*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 34 (Ohio Ct. App.). Because Dinnaken Housing does not dispute the existence of the contract, nor allege bad faith, fraud, or some other illegality on the part of MRI Software, the existence of the contract at issue governs the parties' dispute and forecloses Dinnaken Housing's counterclaim for unjust enrichment as a matter of law.

11

In any event, "a cause of action for unjust enrichment accrues from the date that money is retained under circumstances where it would be unjust to do so." *Palm Beach Co. v. Dun & Bradstreet*, 106 Ohio App. 3d 167, 175, 665 N.E.2d 718, 723 (1995). MRI Software argues that Dinnaken Housing's claim for unjust enrichment arises out of the parties' agreement, making it subject to the same contractual one-year limitations period. (ECF No. 7; PageID #115.) For its part, Dinnaken Housing offers no argument that the contractual limitations period does not apply to quasi-contract claims. Even if not precluded, Paragraph 8.6 of the agreement broadly limits the time for filing any "CLAIM ARISING OUT OF THE AGREEMENT, REGARDLESS OF FORM." (ECF No. 12-1, ¶ 8.6, PageID #158.) It does not distinguish between breach of contract or unjust enrichment. Dinnaken Housing bases its counterclaim on payments it made to MRI Software before June 30, 2022. Therefore, the date that MRI Software "retained [the payments] under circumstances where it would be unjust to do so" would either be June 30, 2022 (the alleged date of breach) or August 14, 2022 (the deadline to cure the breach). At the latest, the contractual limitations period bars any unjust enrichment claim filed after August 14, 2023. Otherwise, the same analysis regarding the timeliness of the counterclaim for breach of contract applies.

**II.    Equitable Defenses**

With its counterclaims time-barred or contractually precluded, Dinnaken Housing invokes three equitable defenses to preserve its ability to bring its

12

counterclaims: (1) reasonableness, (2) equitable tolling, and (3) equitable estoppel. (ECF No. 14, PageID #223–24.) The Court addresses each in turn.

### II.A. Reasonableness

Dinnaken Housing maintains that the one-year contractual limitations period is not reasonable and, therefore, not enforceable. It argues that MRI Software "strategically waited to file suit until February 2024 so that it could try to cut off Dinnaken's ability to assert its own counterclaims." (*Id.*, PageID #225.) In response, MRI Software points out that Dinnaken Software could have brought its claims "as of August 19, 2022 at the latest, [when] Dinnaken was fully aware of the alleged damages that it has asserted." (ECF No. 15; PageID #235.)

Limitations periods are enforceable "if the time provision is clear, unambiguous, and a reasonable period." *Kraly v. Vannewkirk*, 69 Ohio St. 3d 627, 633, 635 N.E.2d 323, 327 (1994). Dinnaken Housing bears the burden of demonstrating that the limitations period is unreasonable. *Cf. Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 20. Ohio courts have upheld contractual provisions that shorten the statute of limitations to one year. *See, e.g.*, *Conte v. Blossom Homes L.L.C.*, 2016-Ohio-7480, 63 N.E.3d 1245, ¶¶ 37 & 41 (Ohio Ct. App.); *Universal Windows & Doors v. Eagle Window & Door*, 116 Ohio App. 3d 692, 697, 689 N.E.2d 56, 59 (Ohio Ct. App. 1996). As noted, the limitations period as written will, in practice, be somewhat shorter than one year because of the contractual obligations on the parties to engage in efforts to avoid termination or cure any material breach.

13

Nonetheless, Dinnaken Housing fails to carry its burden of demonstrating that the contractual limitations period is unreasonable. Paragraph 8.6 of the agreement is clear and unambiguous. (ECF No. 12-1, ¶ 8.6, PageID #158.) Also, the law routinely enforces similar or shorter limitations period. *See, e.g.*, 42 U.S.C. § 2000e-5(e)(1) (setting a 180- or 300-day deadline for filing with the EEOC a charge of an unlawful employment practice); Ohio Rev. Code § 2305.11(A) (one-year statute of limitations for legal or medical malpractice).

As a sophisticated party, Dinnaken Housing does not dispute that it knew the contents of the agreement. Nor does it make an argument that the contractual limitations period is unreasonable because it only applies to one party's claims. Further, Dinnaken Housing fails to allege any facts or circumstances that delayed its filing. At most, it claims that MRI Software "strategically waited to file suit until February 2024 so that it could try to cut off Dinnaken's ability to assert its own counterclaims." (ECF No. 14, PageID #225.) While Dinnaken Housing's claims are compulsory counterclaims, *see* Fed. R. Civ. P. 13(a), no law compelled Dinnaken Housing to bring them as counterclaims. In other words, it did not have to wait until MRI Software sued to bring these claims. It could have brought them earlier as an independent action. Indeed, Dinnaken Housing knew as much in its July 15, 2022 letter to MRI Software, in which it reserved its rights: "[Dinnaken Housing] reserves the right to recover payments already made and to the extent permitted by . . . the Agreement." (ECF 3-1, PageID #65.)

14

For these reasons, Dinnaken Housing has failed to demonstrate that the parties' contractual limitations period is unreasonable as a matter of law.

**II.B. Equitable Tolling**

Dinnaken Housing argues for equitable tolling of the time in which to bring its counterclaims because it understood from MRI Software's continued demands for payment that MRI Software still intended to work under the parties' agreement. (ECF No. 14; PageID #226.) In response, MRI Software contends that Dinnaken Housing "neither diligently pursued any rights against MRI, nor . . . identified any extraordinary circumstance that prevented it from taking timely action." (ECF No. 15; PageID #236.)

Dinnaken Housing offers a five-factor standard that courts within the Sixth Circuit commonly employ to determine whether equitable tolling is appropriate in habeas cases. (ECF No. 14, PageID #225–26 (citing *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).) In diversity cases arising under Ohio law, however, the Court applies Ohio equitable tolling principles. *Weikle v. Skorepa*, 69 F. App'x 684, 687 (6th Cir. 2003) (citations and quotations omitted). Under Ohio law, a litigant seeking equitable tolling must satisfy a two-part test: "(1) he has diligently pursued his rights, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Strother v. City of Columbus*, 2022-Ohio-4097, 200 N.E.3d 1265, ¶ 29 (Ohio Ct. App.)*; G.G. Marck*, 762 F. App'x at 312 (citing *Lottridge v. Gahanna-Creekside Invs., L.L.C.*, 2015-Ohio-2168, 36 N.E.3d 744, ¶ 20 (Ohio Ct. App.)). Further, "[t]he doctrine of equitable tolling is to be applied sparingly and only in

15

exceptional circumstances." *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8, 2022 WL 2211529, at *2 (Ohio Ct. App.) (noting that the doctrine is "generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline"); *Engler v. Adjutant Gen. of Ohio*, 2018-Ohio-2273, ¶ 9, 2018 WL 2947934, at *2 (Ohio Ct. App.).

Dinnaken Housing does not address its diligence in pursuing its rights. The diligence element is met "if [a party] timely file[s] his complaint," *Strother*, 200 N.E.3d at 1276, though doing so obviates the need to resort to equitable tolling. Dinnaken Housing evidenced awareness of its rights in its July 15, 2022 letter to MRI Software. But Dinnaken Housing presents no argument or allegation describing how it exercised diligence or attempted to do so before filing its counterclaims on April 4, 2024. Based on the pleadings, construed in favor of Dinnaken Housing, the Court can discern that the only action it took was sending MRI Software letters reiterating its termination of the parties' agreement.

Nor does Dinnaken Housing address any extraordinary circumstances that prevented timely filing. At most, Dinnaken Housing points to MRI Software's rejection of its notices to terminate and continuing invoices, which led Dinnaken Housing to believe that MRI Software continued to operate under the agreement and its obligation that the parties work to avoid termination. Even so, these circumstances represent a feature of the contract. And, between two sophisticated parties, these facts do not present exceptional circumstances. Dinnaken Housing fails to demonstrate how these facts or its perception of them prevented it from

bringing its claims, especially where its responses to the invoices evince its view that the contract had been terminated. MRI Software argues that "a diligent party would have been emboldened to assert its perceived cause of action in the face of [the continued invoices] if Dinnaken reasonably thought its alleged claims were viable." (ECF No. 15, PageID #235.) The Court agrees.

### II.C.  Equitable Estoppel

Finally, Dinnaken Housing argues that MRI Software is equitably estopped from raising a statute-of-limitations defense because it "induce[d] Dinnaken to wait to assert its counterclaims." (ECF No. 14, PageID #227.) MRI Software responds that Dinnaken Housing "fail[s] to establish the required elements of equitable estoppel." (ECF No. 15, PageID #239.)

State law governs the availability of equitable estoppel for claims under State law. *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 510 (S.D. Ohio 2012). "Under Ohio law, the doctrine of equitable estoppel precludes a defendant from using the statute of limitations as a defense when the defendant's conduct induced the delay in filing the action." *Id.* (citing *JRC Holdings, Inc. v. Samsel Servs. Co.*, 166 Ohio App. 3d 328, 2006-Ohio-2148, 850 N.E.2d 773, ¶ 28). To apply equitable estoppel, Dinnaken Housing must demonstrate that (1) MRI Software made a factual misrepresentation, (2) which is misleading and (3) induced actual reliance that was reasonable and in good faith, and (4) it relied to its detriment on that misrepresentation. *Walburn v. Lockheed Martin Util. Servs.*, 443 F. App'x 43, 48 (6th

17

Cir. 2011) (quoting *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App. 3d 216, 2002-Ohio-6167, 780 N.E.2d 290, ¶ 43).

That is, "[e]quitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *Doe v. Archdiocese of Cincinnati*, 116 Ohio St. 3d 538, 2008-Ohio-67, 880 N.E.2d 892, ¶ 7 (quotation omitted). Moreover, "Ohio courts have narrowed the kind of misrepresentation that must be alleged in order to invoke equitable estoppel to preclude a defendant from asserting a statute-of-limitations defense." *Walburn*, 443 F. App'x at 49. Specifically, "equitable estoppel would benefit the plaintiff 'only if she has pleaded facts that, if proved, will demonstrate the efforts of the [the defendant] to prevent her from filing a lawsuit.'" *Id.* (quoting *Doe*, 880 N.E.2d at ¶ 8).

Here, Dinnaken Housing argues that MRI Software took calculated action to induce Dinnaken Housing to wait to assert its counterclaims. It notes that "MRI did not send its termination letter until June 7, 2023" and "then waited until July 20, 2023—one year and five days after Dinnaken sent its own termination letter—to finally confirm that it was going to 'stop all project work.'" (ECF No. 14, PageID #227 & 228.) "The only rational explanation," Dinnaken Housing maintains, "is that MRI wanted to string Dinnaken along for a full year, until the one-year contractual-limitation expired." (*Id.*, PageID #228.)

This argument suffers from several fatal defects. First, Dinnaken Housing relies on the date of termination, not date of breach as the contract requires. Second,

18

Dinnaken Housing presumes that it could assert its counterclaims only in response to MRI Software. Again, however, it could have asserted its claims regardless of whether MRI Software filed suit.

Third, the pleadings contain no facts corroborating Dinnaken Housing's argument. If MRI Software strung it along to run out the limitations period, one would expect to see Dinnaken Housing bring its claims as soon as it appreciated such a gambit. But the record shows that, even after MRI Software sent its notice of termination, Dinnaken Housing still did not file its claims until almost a year later.

Fourth, Dinnaken Housing does not address the elements of equitable estoppel. For instance, it fails to identify any "factual misrepresentation" MRI Software made. Although Dinnaken Housing apparently understood that MRI Software continued to work under the contract, it consistently asserted that it terminated the agreement, contradicting that position. After July 15, 2022, Dinnaken Housing's communications demonstrate that it did not intend to pay for any more of MRI Software's services. (*See, e.g.*, ECF No. 3-1, PageID #67 ("[Dinnaken] considers the contract terminated and will not be paying any invoices.").) As of that date, Dinnaken Housing also took the position that the breaches of MRI Software could not be cured. (*Id.* ("We continue to disagree that MRI's breaches were curable.").) On this record, Dinnaken Housing has failed to show that it is entitled to equitable estoppel.

## CONCLUSION

For the foregoing reasons, the Court concludes that the parties' contractual limitations period bars Dinnaken Housing's counterclaims and that it is not entitled to any equitable defense excusing the timely filing of its counterclaims. Accordingly, the Court **GRANTS** MRI Software's motion to dismiss.

**SO ORDERED.**

Dated: June 18, 2024

J Philip Calabrese
United States District Judge
Northern District of Ohio